(85 South. 312)

**HARKINS v. SMITH, Judge, et al.**
**(6 Div. 934.)**

(Supreme Court of Alabama. June 30, 1920.)

Drains ⬚2(1)—Drainage law held constitutional; "districts or other political subdivisions of counties."

The drainage act (Acts 1915, pp. 167–192), authorizing the board of commissioners of drainage districts to issue bonds without being first authorized by a majority of the qualified voters residing in the district, is not unconstitutional as violating Const. 1901, § 222, as to issuance of bonds by counties, cities, towns, villages, "districts, or other political subdivisions of counties"; a drainage district created under the act not being a political subdivision of the state or county, within the meaning of said section 222, for to come within the influence of that section the "district" or "other political subdivision of the county" must be a district or subdivision wherein some governmental power is committed to and exercised by the qualified voters of such district for the common good of all, whereas the powers and duties committed to drainage districts under the statute are exercised by a board of commissioners appointed and removable by the probate court.

Somerville and Sayre, JJ., dissenting.

Appeal from Circuit Court, Fayette County; H. B. Foster, Judge.

Petition by H. S. Harkins against J. Alex Smith and J. T. Maddox, as probate judges of their respective counties, to require them to appoint a member of the board of viewers for the Fayette and Lamar drainage district. From a decree sustaining demurrers to the petition, complainant appeals. Reversed and rendered.

R. F. Peters, of Fayette, for appellant. No brief reached the reporter.

J. Alex Smith, of Swainsboro, Ga., and J. T. Maddox, of Vernon, for appellees. No brief reached the reporter.

BROWN, J. This appeal is from the judgment of the circuit court of Fayette county

denying and dismissing an application of the appellant for the writ of mandamus, to require the judges of probate of Fayette and Lamar counties to exercise the power vested in them by the act of March 4, 1915 (Acts 1915, pp. 167–192), to appoint a member of the board of viewers for "the Fayette and Lamar drainage district No. 1," a drainage district formed and incorporated under the provisions of that act.

The case submitted to the circuit court was an agreed case, and the sole question submitted to and decided by the court was whether or not the act was violative of section 222 of the Constitution of 1901. The court held that the act was offensive to that section of the Constitution, because it authorized the board of commissioners of the districts to issue bonds without the issuance of such bonds being first authorized by a majority of the qualified voters residing in the district.

The purpose and scope of the law is expressed in the title of the act, as follows:

"To provide for the drainage of farm, wet, swamp and overflow lands in the state of Alabama, to authorize the organization of drainage districts, to confer the right of eminent domain to the extent necessary to carry out the purposes of this act, and to provide for raising the revenue by bond issue or otherwise, to pay the costs and expenses of installing and maintaining drainage systems, so as to promote the public health and general welfare."

And, in short, the act confers on the several probate courts of the state jurisdiction, on application being made by a majority of the landowners, or on the application of a landowner owning a majority of the acreage in the district to be affected, describing the lands to be embraced in the district so as to convey "an intelligent idea of the location of such lands," and showing that they are subject to overflow or too wet for cultivation, "and that the public benefit or utility, or public health, convenience or welfare will be promoted by drainage, ditching or leveeing the same, or by changing or improving the natural water courses, or by installation of tile systems," to organize and establish a drainage district therefor, to appoint viewers and engineers to survey and classify the lands as a basis for making a just assessment of the costs of such improvements, to report such surveys and classifications to the court, and the court has the power to confirm or reject such reports. After establishing such district the court is empowered to appoint three commissioners, who must be landowners within the district, and whose term of office and compensation are fixed. The commissioners are subject to removal by the court, for cause, on the motion of any landowner.

Where lands embraced in the district are situated in more than one county, the act confers these powers on the probate judges of the counties affected, sitting conjointly at the courthouse of the county in which the proceedings to establish the district are commenced.

All persons owning lands in the district are given their day in court, and may be heard as to matters affecting the practicability of establishing the district, and whether their lands should be embraced in the district or would be benefited by the establishment of such district, and whether or not the public good would be promoted; the act providing:

"Upon the said hearing, if it shall appear that the purpose of this act would be subserved by the creation of a drainage district, the court shall, after disposing of all objections as justice and equity requires, by its findings, duly entered of record, adjudicate all questions of jurisdiction, declare the district organized as a body corporate, giving it a corporate name, by which in all proceedings it shall thereafter be known, with all the powers of a corporation with power to sue and be sued, to incur debts, liabilities and obligations, to exercise the right of eminent domain for the purpose of securing adequate outlets and such other rights of way as may be necessary to carry out the intentions of this act, and the right of assessment as herein provided; to issue bonds and to do and perform all acts herein expressly authorized and all acts necessary and proper for the carrying out of the purposes for which the district was created, and for executing the powers with which it is invested."

The act further provides:

"That when the court of probate has established such district it shall appoint three owners of real property within the district to act as drainage commissioners, and such persons when so appointed, and their successors in office, shall constitute, and are hereby declared to be a body politic incorporated by the name and style of the same selected as mentioned in this act by the court of probate."

Funds for meeting the obligations of the district incurred in the prosecution of the work and making the improvements contemplated by the act are derived from assessments made by the board of drainage commissioners against the lands benefited according to the classification made by the board of viewers appointed by the court. These assessments are made liens upon the lands improved, subordinate only to the lien for state and county taxes; and if the cost of improvement is in excess of 50 cents per acre on all lands in the district, the board of drainage commissioners, after giving notice by publication, reciting that they propose to issue bonds for the payment of the total cost of the improvement, giving the amount of the bonds to be issued, the rate of interest they are to bear, and the time when payable, are authorized to issue bonds. And any landowner who does not desire to be obligated may pay the assessment made against his

lands, and have them released from such bond obligation. The bonds, when issued, constitute a lien upon the lands improved, on the basis of the assessment made, which is subordinate only to the lien for state and county taxes.

While such legislation is new to this state, it is not uncommon in other jurisdictions. The creation of such corporations, organizations, or public agencies is referred to and sustainable under the police powers of the state, and the fundamental principles underlying such legislation will be found fully stated in the following authorities: Mount City Land & Stock Co. v. Miller, 170 Mo. 240, 70 S. W. 721, 60 L. R. A. 190, 94 Am. St. Rep. 727; Hagar v. Reclamation District, 111 U. S. 701, 4 Sup. Ct. 663, 28 L. Ed. 569; Water Co. v. Coster, 18 N. J. Eq. 518, 90 Am. Dec. 642–644, and authorities there cited.

From the last-cited authority we take the following excerpt:

"A drainage district is generally deemed to be a form of governmental corporation with very limited power. Its exact status is ordinarily more or less an academic question, and no particular effort seems to have been made to define it with precision, but it is usually said that such a district is a public or quasi public corporation. It is sometimes called a municipal corporation. Certainly it is not a private corporation, and generally it is construed to be a political subdivision of the state, acting as the agent thereof, to which certain powers and duties of a public nature have been delegated, but which can exercise only such corporate functions as the statute has expressly conferred on it." 9 R. C. L. 644, par. 33.

The provisions of the Constitution supposed to stand in the way of the constitutional integrity of the act, so far as presented in this case, are:

"222. The Legislature, after the ratification of this Constitution, shall have the authority to pass general laws authorizing the counties, cities, towns, villages, districts, or other political subdivisions of counties to issue bonds (a) but no bonds shall be issued under authority of a general law unless such issue of bonds be first authorized by a majority vote by ballot of the qualified voters of such county, city, town, village, district, or other political subdivision of a county, voting upon such proposition. The ballot used at such election shall contain the words: 'For ........ bond issue,' and 'Against ...... bond issue' (the character of the bond to be shown in the blank space), and the voter shall indicate his choice by placing a crossmark before or after the one or the other. This section shall not apply to the renewal, refunding, or reissue of bonds lawfully issued, nor to the issuance of bonds in cases where the same have been authorized by laws enacted prior to the ratification of this Constitution, nor shall this section apply to obligations incurred or bonds to be issued to procure means to pay for street and sidewalk improvements or sanitary or storm water sewers, the cost of which is to be assessed, in whole or in part, against the property abutting said improvements or drained by such sanitary or storm water sewers."

The powers and duties committed to drainage districts formed and organized under the statute in question are exercised by a board of commissioners consisting of three owners of land within the district, who are appointed by the probate court and subject to removal by that court on motion for cause; and the law in respect thereto is administered almost entirely by and through the probate court of the county or counties in which the district is formed. None of its functions, powers, or authority is committed to or exercised by. the qualified voters residing therein through the exercise of the elective franchise.

The prime object of the law is to reclaim and improve agricultural lands within the bounds of the district, not suitable or available for agricultural cultivation without drainage, and at the same time to remove causes and conditions detrimental to the public health and general welfare of the territory embraced in and surrounding such lands. The cost incident to such improvements is imposed upon or assessed against the lands benefited in the nature of an assessment or betterment tax, such as is authorized by cities and towns for the improvement and maintenance of streets, sidewalks, storm sewers, and drains. It may be assumed, as a matter of judicial knowledge, that lands within the purview of this statute, and subject to organization as drainage districts, are ordinarily uninhabited by qualified voters, and for this reason, no doubt, the Legislature provided a different method of carrying into execution the governmental powers committed to such organization.

It may be pertinent to observe that when section 222 was incorporated into the Constitution no such organization or .public agencies as drainage districts were authorized by our laws, and to come within the influence of this section such districts must fall clearly within the letter and spirit of its provisions; this for the reason that we are dealing with the sovereign police power of the state, and a constitutional limitation placed thereon.

One has but to read the quoted section and apply to it the maxim ejusdem generis, often resorted to and useful in the interpretation of Constitutions and statutes, to see that to come within the influence of the quoted section the "district" or "other political subdivision of the county" must be a district or subdivision wherein some governmental power is committed to and exercised by the quali-

fied voters of such district for the common good of all. Allison v. Corker, 67 N. J. Law, 596, 52 Atl. 362, 60 L. R. A. 564; Wilson v. King's Lake Drainage District, 237 Mo. 39, 139 S. W. 136; State v. Hackensack Improvement Com., 45 N. J. Law, 113; Curry v. District Township of Sioux City, 62 Iowa, 102, 17 N. W. 191; State ex rel. v. Kohnka, 109 La. 838, 33 South. 793.

These considerations lead us to the conclusion, and we so hold, that a drainage district created under this act is not a political subdivision of the state or county, within the meaning of section 222 of the Constitution of 1901.

The ruling of the circuit court was in conflict with this view, and, as the case comes to us as an agreed case, the judgment of the circuit court will be reversed and one here rendered awarding the mandamus as prayed.

Reversed and rendered.

ANDERSON, C. J., and McCLELLAN and GARDNER, JJ., concur.

SAYRE and SOMERVILLE, JJ., dissent.

THOMAS, J., not sitting.

SOMERVILLE, J. (dissenting). While I agree for the most part with what is said in the opinion of Mr. Justice BROWN with respect to the creation and status of such governmental agencies as the drainage district here in question, I am constrained to the view that the Legislature cannot commit to such an agency the power to levy assessments upon the property within the district.

The levy of assessments upon land for improvements, to the extent of the benefits derived, though not subject to constitutional restraints upon taxation ad valorem, is nevertheless taxation, and is referable to the taxing power—the sovereign power of the Legislature of the state. Mayor, etc., v. Klein, 89 Ala. 461, 465, 7 South. 386, 8 L. R. A. 369.

In Schultes v. Eberly, 82 Ala. 242, 2 South. 345, it was held that the taxing power cannot be delegated to other than municipal corporations, including counties, that is, public corporations created for the purpose of administering local government as a part of the machinery of the state.

The corporate body here concerned is not such a corporation, and I think that the power to levy assessments and issue bonds payable therefrom, being purely a legislative power, cannot be delegated to it. Schultes v. Eberly, 82 Ala. 242, 2 South. 345.

I therefore dissent from the judgment of the majority.

SAYRE, J., concurs in the views above expressed, and also dissents.