IN RE DANCY DRAINAGE DISTRICT.

*February 13—June 21, 1926.*

*Drains: Additional assessments to pay bonds: Failure of some landowners to pay assessments: Remedies of bondholders not exclusive: Sale of lands: Statute authorizing assessment to pay interest: Amendment to include principal: Recitals in bonds.*

1. Where, because of default in the payment of an assessment for the construction of a drainage system, there was a deficiency in the amount necessary to pay the principal and interest on the bonds issued, a further assessment could be made under sub. (1) and (2), sec. 89.44, Stats., not exceeding the amount of benefits assessed to pay the principal and interest on such bonds; and the bondholders were not required to exhaust their remedy against the delinquent lands under sub. (4) (d), sec. 89.37, before such assessment could be made.  p. 333.

2. While in proceedings governed by statutes nothing can lawfully be done in violation of a direct provision thereof, in drainage proceedings, which are declared by sec. 89.03, Stats., to be equitable, any lawful remedy contemplated in a contract between a creditor and the district not conflicting with the statutes or with public policy may be enforced.  p. 333.

3. Though at the time the drainage bonds were issued the legislature had provided only for further assessments to pay interest, thus giving rise to the inference that assessments were not made to pay principal, such inference could not destroy the effect of an express agreement in the bonds themselves providing for payment of principal, which harmonized with the general legislative scheme and was in consonance with the sound public policy that debts lawfully incurred should be paid when due.  p. 334.

4. A subsequent amendment of the statute providing for additional assessments to pay principal and interest did not in any way affect the contract between the bondholders and the district, but only expressly provided for a remedy not specifically mentioned theretofore, which remedy could be invoked though given subsequently to the execution of the contract. p. 335.

5. The legislature, in providing for further assessments to pay both principal and interest on the bonds, intended the assessment of benefits as a security fund for necessary assessments for construction, repairs, or maintenance, in view of sub. (1) and (2), sec. 89.04, Stats., the limit of which is measured by the benefits assessed, and not by the assessment for construction. p. 335.

6. The fact that the drainage bond recited that it was given for the purpose of paying for the cost of construction in the district did not limit the payment thereof to the construction fund, it being immaterial as to what fund the district looked for payment of the bond when it had pledged its full faith and credit to its payment. p. 335.

7. Where, due to default in payment of the construction assessments, a further assessment was necessary to pay the principal and interest on the bonds, the fact that such further assessment would be inequitable because those who pay will have to pay more than their share, in view of the delinquencies of others, would not prevent such further assessment, this being a species of inequity which exists whenever there is a joint liability. p. 336.

8. The remedy given by sub. (4) (d), sec. 89.37, Stats., is not exclusive nor made a condition precedent to pursuing the remedy of securing an additional assessment for the purpose of paying the principal on the bonds. p. 337.

ROSENBERRY and STEVENS, JJ., dissent.

APPEAL from an order of the circuit court for Marathon county: A. H. REID, Circuit Judge. *Reversed, with directions.*

The petitioners, the *Federal Life Insurance Company* and the *Loyal American Life Association,* are holders of bonds issued by the *Dancy Drainage District* for the construction of the drainage system therein. The district was organized in 1907. So far as the questions raised by the appeal are concerned it is enough to state that assessments

for construction were levied in amount sufficient, if paid in full, to discharge the principal and interest of the bonds held by the petitioners. But owing to the fact that the assessments against many of the lands in the district remain unpaid and the county has taken tax certificates on such lands and holds the same in trust for the benefit of . the district, funds enough have not been collected to pay the amount due the petitioners, aggregating in amount the sum of about $30,000.

The total amount of benefits assessed against the lands of the district aggregated the sum of $440,000. This sum was assessed in separate amounts against each separate parcel of land in the amount of benefits which it was adjudged such parcel received by reason of the drainage. The original assessment for construction was for the sum of $140,460.50, but since then five additional assessments for construction, repairs, or maintenance have been levied, bringing the total assessments up to the sum of $236,005.56, or $203,944.44 less than the total assessment for benefits. Each assessment for construction was levied ratably according to assessment of benefits. The following are some of the statutes relating to the question raised by the appeal not set out in the opinion:

"(1) If in the first assessment for construction (whether for original or supplemental work) the commissioners shall have reported to the court a smaller sum than is needed to complete the work of construction, or if in any year an additional sum is necessary to pay the principal or interest on lawful indebtedness of such district, additional assessments on the lands and corporations ·benefited proportioned on the sum of all benefits which have been confirmed by the court and are then in force, shall be made under the order of the court or presiding judge thereof. Such additional assessments and the total prior assessments for construction shall not exceed the total amount of the benefits then in force. Such additional assessments may be made without notice and may be made payable in instalments,

and shall be treated and collected in the same manner as the original assessments for construction.

"(2) The commissioners of such district shall have the same power to borrow money and issue notes or bonds based upon such additional assessments that is given to them in the case of original assessments." Sub. (1), (2), sec. 89.44.

As it stood up to 1913 it read, "necessary to pay the interest on lawful indebtedness."

Sub. (4) (d), sec. 89.37. "In case that any of the lands so bid in by the county shall have not been redeemed or certificates assigned within the period prescribed by the statutes relating to general taxation, the circuit court may, upon the application of the county, the commissioners, or of any creditor or bondholder of the drainage district within which said lands are located, direct the treasurer of such county to offer said lands for sale at public auction, in such manner as the court shall direct, and notice of such sale shall be served upon the parties interested by publication once each week for three successive weeks in a newspaper published in the county, by posting in five public places in the drainage district and by mailing a copy of the notice to each interested party whose postoffice address is known or can by reasonable inquiry be ascertained and to the secretary and clerk of each corporation affected. Report shall be made and deed issued in the manner provided by sections 278.16 and 278.17, and from the moneys received from the sale of said lands the county treasurer shall first deduct any unpaid general taxes due the county and the costs of such proceedings, and shall pay the balance of such moneys in the manner and to such creditors or bondholders as the court shall direct. When lands shall have been finally sold under order of the court as provided herein, they shall be released from all lien of assessments levied prior to the time of such sale." Enacted in 1923.

The petitioners asked the court to direct additional assessments to be made sufficient to pay the amount due them, not however, together with the former assessments, in excess of the amount of the assessed benefits. The court en-

tered an order denying the petitioners the requested relief, and from such order they appealed.

For the appellants there was a brief by *Mason & Priestley* of Madison, attorneys, and *Simeon W. Dixon* of Chicago, of counsel, and oral argument by *Mr. T. M. Priestley* and *Mr. Dixon*.

For the respondents there was a brief by *Bird, Okoneski & Puchner* of Wausau, and oral argument by *Claire B. Bird*.

The following opinions were filed April 6, 1926:

VINJE, C. J. The appeal presents the sole question whether or not the petitioners are entitled to an additional assessment to pay the principal and interest due on their bonds. The trial court was of the view that the only assessment out of which the principal could be paid was the assessment for construction, and that, at any rate, the petitioners must exhaust their remedy against all the lands affected by the assessment for construction by a sale of the delinquent lands as provided by sub. (4) (d), sec. 89.37, enacted in 1923, before further assessments under sec. 89.44 as amended in 1913 could be made.

Both parties set out in detail for the convenience of the court the drainage laws that in any way affect the question at issue. It is the view of the court that many of them need not be set out or commented upon, because the general scheme of the drainage laws so far as the question here is presented may be summarized in a few words.

Aside from the general public benefit which must inhere in a drainage scheme, the private benefit consists in the drainage of land so as to render it more valuable and productive agriculturally. Since each individual owner of land cannot drain his own effectively, the law permits a number to act jointly as a *quasi*-public corporation to drain a large area. And thus a drainage district is formed in which all landowners therein become jointly interested and jointly

bound.   But the law is careful to place limits upon the liability of each owner by providing that it shall not exceed the amount assessed for benefits.   It is equally careful to provide means for discharging the indebtedness of the district by requiring assessments to be made to meet it.   There are at least two outstanding landmarks in the financial part of the drainage scheme, namely, that the liability of an owner of land therein cannot exceed his assessment for benefits, and the creation of a fund to pay the costs incurred, both principal and interest.

If the view taken by the trial court is correct, then prior to the amendment of sec. 89.37 (4) (d) in 1923 there was no way in which a deficit could be met if a portion of the assessment for construction remained unpaid, for an assessment for construction can be levied only for the amount of principal and interest to become due, on the assumption that each owner pays in full.   If any tax remains unpaid there will be a deficit, and sub. (1), sec. 89.44, as it stood before the amendment of 1913, in terms provided only for an additional assessment to pay interest, the provision for an additional assessment to pay principal being added in 1913.   The remedy to take a tax deed and sell the lands was not given till 1923.

When it is borne in mind that, in an area as large as the ordinary drainage district and including lands of very different values and very differently benefited, nonpayment of assessments is almost certain to occur, it will be seen that some scheme for making up the deficit occasioned by such nonpayment must exist in order to collect the amount due on outstanding bonds where, as here, they equal ninety-five per cent. of the first total cost of construction.

Another fact must be borne in mind also, and that is that bonds issued nearly up to the total assessment for construction, as they usually are because the district has no money except as it is raised by assessments, would not be salable in the market, for there would be no adequate mar-

gin of security.   For these reasons it is apparent that the legislative scheme, whether so in terms expressed or not, must have included the right to additional assessments up to the limit placed by the assessment of benefits for the payment of principal and interest due on lawful debts incurred by the district.   That in terms is the scheme since the amendment of 1913 to sub. (1), sec. 89.44.

While it is true that in proceedings governed by statutes nothing can lawfully be done that violates a direct provision thereof, it is equally true that in drainage proceedings, which are declared by sec. 89.03 to be equitable throughout, any lawful remedy contemplated in a contract between a creditor and the district, not in conflict with the statutes and not contrary to public policy, may be enforced.

If we turn to the bond which constitutes the contract between the petitioners and the district we find these provisions:

"This bond is based upon and constitutes a lien upon and is payable solely out of the proceeds of the special assessment for benefits heretofore legally levied upon the lands in said district, and the said special assessments are hereby irrevocably pledged therefor.   And it is hereby certified and recited that all acts, conditions, and things required to be done precedent to and in the location and establishment of said drainage district and in the making and levying of the assessment against the lands of said district benefited thereby, and precedent to and in the issuing of this bond, have been done, have happened, and have been performed in regular and due form of law, and that the total amount of bonds issued on account of said assessment does not exceed the amounts thereof unpaid at the time said bonds are issued; and for the performance of all of the covenants, recitals, and stipulations herein contained, and for the collection and application of said assessments and of the interest thereon and such other and further assessments authorized or required to provide for the prompt payment of this bond and the interest thereon, the faith, resources, and credit of said drainage district are hereby irrevocably pledged."

Here is first an explicit declaration that the bonds shall constitute a lien upon the special assessment for benefits "heretofore legally levied upon the lands in said district," and second, that they are payable out of the proceeds derived from such special assessment for benefits. It is true that the term *levied* is not used in a technical sense. The word *assessed* would have been better, but there can be no doubt as to the meaning. There is only one kind of an assessment for benefits, and at the time of the issuance of the bonds in question there had been but one assessment for benefits. The word *levied,* in tax matters, has varied meanings according to how it is used, and its meaning may be gathered from the context. *Borner v. Prescott,* 150 Wis. 197, 203, 136 N. W. 552, and cases cited. In view of language so clear and explicit and so in consonance with the general scheme of the drainage laws as they existed at the time of the issuance of the bonds, and especially as they now stand since the amendment of 1913, there is no room for the construction that the assessments for benefits as used in the bonds means the assessment for construction.

The latter part of the above quoted portion of the bond declares that the faith, resources, and credit of the district are pledged "for the collection and application of said assessments and of the interest thereon and such other and further assessments authorized or *required.*" The words "assessments authorized or required" can refer only to further assessments on the assessment for benefits. There can be no further assessments on an assessment for construction. And the bond expressly provides for further assessments if *required.* In the instant case they are required to meet the amount due on the bonds, and there was nothing in the statutes as they stood when the bonds were issued to forbid such further assessment except the inference arising from the fact that the legislature provided for further assessments to pay interest, but not to pay principal. Such

In re Dancy Drainage District, 190 Wis. 327.

slight inference, since removed by the legislature, cannot destroy the effect of an express contract that harmonized with the general legislative scheme and was in consonance with a sound public policy, namely, that debts lawfully incurred should be paid when due.

The amendment of 1913 providing for additional assessments does not in any manner affect the contract between the petitioners and the district, but only in terms expresses a remedy not theretofore specifically mentioned. In such case the remedy may be invoked though given subsequent to the execution of the contract. *State ex rel. Davis & Starr L. Co. v. Pors,* 107 Wis. 420, 427, 428, 83 N. W. 706; *Stone v. Little Yellow D. Dist.* 118 Wis. 388, 396, 95 N. W. 405; *Read v. Madison,* 162 Wis. 94, 101, 155 N. W. 954.

It is also quite plain that the legislature conceived of the assessment of benefits as a security fund for assessments for construction, repairs, or maintenance. Sec. 89.04 provides:

"(1) All orders of confirmation made in drainage district proceedings may be modified by the court at any time on such notice as the court may order, but no assessment shall be decreased to the detriment of the owner of bonds or notes which are liens on such assessment.

"(2) This chapter shall neither render more difficult the collection of bonds or notes heretofore issued by any drainage district, nor impair the obligation of any contract made by such district; neither shall any assessment of supplemental benefits nor any reassessment of benefits disturb any assessment for construction previously confirmed by the court while bonds or notes secured thereon are unpaid. Confirmed assessments shall remain liens upon the same lands and claims against the same corporations in the same amounts as when first assessed and recorded until the district bonds and notes based thereon are paid or refunded."

If the assessment for construction measured the limit of the security, no reassessment of benefits would disturb it unless made below the assessment for construction, and this

the law forbids. The benefits must equal or exceed the cost. These provisions of the statute would be meaningless but for the fact that the assessment of benefits, and not the assessment for construction, measures the limit of the security fund. So, also, if the contentions of the defendants are correct that the bonds are payable solely out of the assessment for construction, sec. 89.44 as it now stands would be meaningless. It could not be resorted to to pay either interest or principal due on outstanding bonds, for an additional assessment would have to be levied on the assessment of benefits not levied against by the first assessment for construction.

It is suggested that since the bond recites that it is given for the purpose of paying for the cost of construction of drainage in the district that it must be limited in securing payment thereof to the construction fund. This contention was negatived in *Fowler v. Superior,* 85 Wis. 411, 417, 54 N. W. 800, on the ground that it was immaterial as to what fund the city looked for the payment of the bond when it had pledged its full faith and credit to the payment of it.

It is also urged that it is inequitable to levy further assessments because those who pay will have to pay more than their share—some not having paid at all. This is true, but it is a species of inequity that exists whenever there is a joint liability and one that exists as to the levy of general taxes. Whenever there is a failure to collect all general taxes there is a loss that must be borne by those who pay, but that does not release them from the burden of meeting the obligations jointly due. *State ex rel. Soutter v. Madison,* 15 Wis. 30. In that case the court said:

"The duty of the common council is continuing, and does not cease with the levying of one tax which is in part unsuccessful. It ends only when the whole money is collected and the debt actually paid." See, also, *Norris v. Montezuma Valley I. Dist.* 248 Fed. 369.

The remedy given by the amendment of sec. 89.37 (4) (d) in 1923 is not exclusive nor made a condition precedent to pursuing the remedy which the petitioners seek. Moreover, it seemed to be conceded on the oral argument that no substantial sum could be realized by a sale of lands on which the county has taken tax certificates for the benefit of the district.

*By the Court.*—Order reversed, and cause remanded with directions to enter an order for an additional assessment or assessments to be apportioned ratably according to the assessment of benefits.

OWEN, J. (*concurring*). I think it should be understood that the bonds here involved constitute general obligations of the drainage district. The opening provision of the bonds is as follows:

"Know all by these presents, That the Dancy Drainage District, of the counties of Marathon, Portage, and Wood, in the state of Wisconsin, acknowledges itself to owe, and, for value received, hereby promises to pay to bearer the sum of five hundred dollars lawful money of the United States," etc.

It is then declared that "This bond is based upon and constitutes a lien upon and is payable solely out of the proceeds of the special assessment for benefits heretofore legally levied upon the lands in said district, and the said special assessments are hereby irrevocably pledged therefor." It is then certified that said special assessments have been duly made in the manner required by law. Other recitals appear in the opinion of the court.

This constitutes a general bond of the drainage district. *Fowler v. Superior,* 85 Wis. 411, 54 N. W. 800. That the drainage commissioners had power to issue the general bonds of the drainage district is apparent from the provisions of sec. 1379—31b, Sanborn & Sanborn's Supp. to the Statutes, 1906; that section authorized the commissioners

to borrow money for the purposes therein specified, and to secure the same by "notes or bonds bearing interest at a rate not to exceed six per cent. per annum, . . . which notes or bonds shall not be held to make the commissioners personally liable, but shall constitute a lien upon the assessments for the repayment of the principal and interest of such notes or bonds." It is also provided in said section that the court may, on the petition of the commissioners, authorize them to refund "any lawful indebtedness of the district," by taking up and canceling all of its outstanding "notes and bonds," "and issuing in lieu thereof new notes or bonds of such district," not exceeding in the aggregate the amount of "all notes and bonds of the district then outstanding." Plainly this assumes that the notes and bonds issued by the commissioners shall, or at least may, constitute a general indebtedness against the district. If this assumption be correct, the question here involved would seem to solve itself.

The question presented is whether at the present time the drainage district has power to make a reassessment for the purpose of paying the principal of these bonds. It appears that sufficient money was not realized to pay these bonds from the original assessment because the assessment on some of the land assessed cannot be realized thereon. This leaves a deficiency, and the question is whether other lands of the district upon which the assessments for the payment of these bonds are not in default may be reassessed up to the limit of the benefits conferred upon those lands by the project to make up the deficiency, resulting from a default of the assessment upon lands apparently not worth the assessment made against them. It is not seriously questioned that sec. 89.44 confers upon the district power to levy an additional assessment "necesssary to pay the principal or interest on lawful indebtedness of such district." It is contended, however, that this was not the provision at

the time of the issuance of the bonds, as by the terms of sec. 1379—30 such an assessment was authorized only for the purpose of paying "the interest on lawful indebtedness of said drainage district." The amendment, however, authorizing an additional assessment for the payment of principal as well as interest conferred no substantive right upon the bondholders. It only provided a method of raising the money necessary to enable the district to discharge its obligation to these bondholders. There is a hiatus in any law authorizing a municipal entity to incur an indebtedness that does not also provide a method of raising the money with which to discharge that indebtedness. If the original law did not authorize the drainage district to raise money with which to discharge its general obligations, it was simply a defective legislative scheme, and any amendment providing a method for raising the money simply constituted legislation of a remedial nature and conferred no new or substantive right upon the holders of the bonds of the district. Any remedy created since the issuance of the bonds which will enable the collection of the same is available to the bondholders upon well settled principles.

ROSENBERRY, J. (*dissenting*). I am unable to agree with the conclusion reached by the court in this case, and briefly indicate the grounds of my dissent.

A drainage district is but an arm of the state, created for the purpose of performing a single function, and is a *quasi*-municipal corporation with limited powers. *McMahon v. Lower Baraboo River D. Dist.* 184 Wis. 611, 200 N. W. 366; *Harkins v. Smith,* 204 Ala. 417, 85 South. 812. It being a *quasi*-public corporation, the commissioners could exercise only those powers which were conferred upon them by statute. *Quasi*-corporations are of the lowest rank and their authority must be found within the four corners of the statute. They are not political bodies, have no political

powers, but are strictly governmental agencies.   1 Dillon, Mun. Corp. (5th ed.) p. 67, and cases cited; *Dore v. Milwaukee*, 42 Wis. 108.

The power to borrow funds is conferred by sec. 1379—31*b*, S. & S. Stats. 1906:

"The commissioners may borrow money, not exceeding the amount of assessments for construction, additional assessments and assessments for repairs unpaid at the time of borrowing, for the construction or repair of any work which they shall be authorized to construct or repair, or for the payment of any indebtedness they may have lawfully incurred, and may secure the same by notes or bonds bearing interest at a rate not to exceed six per cent. per annum, and not running beyond one year after the last instalment of the assessment, on the account of which the money is borrowed, shall fall due; which notes or bonds shall not be held to make the commissioners personally liable, but shall constitute a lien upon the assessments for the repayment of the principal and interest of such notes or bonds."

The cost of construction is defined as follows (sec. 1379—18):

It "shall include all incidental expenses, the reasonable cost of organizing said district, the costs of proceeding and all probable damage to lands, both within and without the district, together with a reasonable attorney fee for the petitioners."

By the provisions of sec. 1379—30, S. & S. Stats. 1906, assessments are provided for as follows:

"If in the first assessment for construction the commissioners shall have reported to the court a smaller sum than is needed to complete the work of construction, or if in any year an additional sum is necessary to pay the interest on lawful indebtedness of said drainage district, further or additional assessments on the lands and corporations benefited, proportioned on the last assessment of benefits which has been approved by the court, shall be made by the commissioners of said drainage district under the order of the court or presiding judge thereof without notice, which

further or additional assessment may be made payable in instalments."

Nowhere in the act is there conferred on the commissioners the authority to pledge the full faith and credit of the district for the payment of bonds issued by them.  Recitals in the bonds issued cannot confer power upon the commissioners or enlarge the liabilities of the district, there being no statutory authority to insert such recitals in the bonds. *Dixon County v. Field,* 111 U. S. 83, 4 Sup. Ct. 315.  Nor is there to be found within the law as it stood in 1907, at the time these bonds were issued, any power either in the commissioners or the court to levy an assessment to cover a default in the payment of bonds.  The bonds were to be issued against the assessments already made and payable out of them.

In addition to that, the whole scheme and purpose of the statute was to impose liability for the improvement upon the lands benefited, first, not in excess of the amount found by the assessment of benefits; and second, to distribute the cost in proportion to the benefits received, and not upon area, value of the lands, or other basis.

By the provisions of sec. 1379—22, S. & S. Stats. 1906:

"Any owner of land, or any corporation assessed for construction, may at any time within thirty days after the confirmation of said report, pay into court the amount of the assessment against his land or any tract thereof or against any such corporation.  Said payment shall relieve said lands, from the lien of said assessment and said corporation from all liability on said assessment."

By the provisions of sec. 1379—31b, already quoted, the bonds are made a lien on the assessment.  If, as now proposed, a new assessment can be levied upon those landowners who paid and discharged their liability, their land will not be relieved from the lien of this assessment, but in order to relieve themselves they will have to pay a new and

additional assessment. That the act as it stood at the time the bonds were issued did not contemplate additional assessments for the payment of the principal of bonds defaulted further appears from sec. 1379—31*p*, S. & S. Stats. 1906:

"Each and every sum assessed for construction, for additional assessment or for repairs against any land or against any corporation, as soon as such assessment is confirmed by the court, shall be and is declared to be a judgment of the circuit court in favor of said drainage district and against said land or corporations,"—

indicating that there was no intent to make one parcel of land liable for assessments against other parcels, else why put it in such final and conclusive form as a judgment.

It is not contended that the statute as it stood in 1906 contained any provision for an additional or supplemental assessment for the payment of the principal of bonds in default. By ch. 633 of the Laws of 1913, the words "principal or" were inserted in sec. 1379—30, so that as amended it read:

"If in the first assessment for construction the commissioners shall have reported to the court a smaller sum than is needed to complete the work of construction, or if in any year an additional sum is necessary to pay the *principal or* interest on lawful indebtedness of said drainage district, further or additional assessments on the lands and corporations benefited, proportioned on the sum of all the assessments of benefits which have been approved by the court, shall be made by the commissioners," etc.

, The court holds that the insertion of the words "principal or" by ch. 633, Laws of 1913, gave to the bondholders a new remedy, and that the bondholders may now avail themselves of it without violating any of the constitutional guarantees. If ch. 633 provides nothing but an additional remedy, I should of course agree with the conclusion reached by the court. It is my opinion, construed as it is now construed by the court, that it conferred a new

right, and that thereafter, upon application to the court, an owner of land within the drainage district would be subject to an additional burden and one not contemplated or within the purview of the statute as it stood in 1906. While the amendment gave the bondholder a new right, it also operated to completely destroy the landowner's defense. If an action had been brought to compel the commissioners to order a reassessment prior to the enactment of ch. 633 of the Laws of 1913, the landowner could have successfully asserted in opposition thereto that the law nowhere authorized the making of such an assessment, and it would have operated as a complete defense to the bondholder's claim. A party has a vested right in a defense even where the defense is based upon the statute of limitations. The whole matter was discussed and reviewed in *Eingartner v. Illinois Steel Co.* 103 Wis. 373, 79 N. W. 433. While the supreme court of the United States holds a different view with respect to a defense based upon the statute of limitations, it recognizes that a right to a defense may vest as well as a right to a cause of action. *Pritchard v. Norton,* 106 U. S. 124, 1 Sup. Ct. 102. The court said:

"Hence it is that a vested right of action is property in the same sense in which tangible things are property, and is equally protected against arbitrary interference. Whether it springs from contract or from the principles of the common law, it is not competent for the legislature to take it away. A vested right to an existing defense is equally protected, saving only those which are based on informalities not affecting substantial rights, which do not touch the substance of the contract and are not based on equity and justice." See, also, *Board of Education v. Blodgett,* 155 Ill. 441, 40 N. E. 1025, 31 L. R. A. 70.

The petition of the bondholders and the response of the commissioners under our practice is no doubt a special proceeding rather than an action, but I perceive no reason why the rule should not be as applicable to one as to the other.

I am also of the opinion that the law as it stood in 1906 was designed to cast the burden of the improvement upon the lands in proportion to benefits only and not to make one parcel of land liable for the share which was properly apportioned to another parcel. The legislature no doubt had the power to adopt whatever basis it chose for distributing the burden of this improvement, providing the assessments did not exceed the benefits. It chose to distribute it proportionately according to benefits. As now construed, one parcel of land is made liable for a part of the burden properly apportionable to other parcels. In other words, as now construed the statute departs from the original scheme; the burden is imposed upon the entire district without regard to whether the burden is distributed proportionately or not and a new relationship is brought into existence. The landowner who pays a disproportionate share has no remedy over against the defaulting landowner, and a landowner who was led into this arrangement under a statute which made him liable only for his proportionate share is now made liable upon an entirely different basis. While this question does not seem to have been passed upon directly, the reasoning of the following cases seems to indicate that it is not competent for the legislature to so modify the act and impose a new burden upon the landowner: *Briscoe v. Dist. of Columbia,* 221 U. S. 547, 31 Sup. Ct. 679; *King v. Portland City,* 184 U. S. 61, 22 Sup. Ct. 290; *Wurts v. Hoagland,* 114 U. S. 606, 5 Sup. Ct. 1086. Such, also, is the clear inference from the decision in *Stone v. Little Yellow D. Dist.* 118 Wis. 388, 95 N. W. 405.

It is argued that a great injustice will be done the bondholders if it be held that they are limited to the assessments authorized by the statute as it stood in 1907. I do not concur in that conclusion for the following reason: In the first place, there was an assessment of benefits by which it

was determined how much each parcel of land within the district would be benefited.   This determination is made conclusive upon the landowner.   If it thereafter appears that instead of being benefited his lands were damaged, he will not be permitted to impeach the assessment for benefits. *Ward v. Babcock,* 162 Wis. 539, 156 N. W. 1007.   If the determination is conclusive upon the landowner and he cannot thereafter question it, I see no injustice in holding that it is equally conclusive upon the bondholder who accepts a bond issued in an amount not exceeding the cost of construction and for the payment of which the various parcels of land are irrevocably pledged and upon which he has for his benefit not only a tax lien but a judgment lien.   If there was an error in making the assessment of benefits and the amount assessed against a particular parcel of land is now found not only to exceed the benefit but also the original value of the land, it would seem that enough injustice has been done the landowner without making him liable under the scheme now approved by the court not only for the excessive assessments made upon his own land but for excessive assessments made upon the land of his defaulting neighbor.   The landowner went into the drainage scheme relying upon the statute; the bondholder took his bonds in reliance upon the statute; and I see no injustice in permitting them to stand or fall by the terms of the statute.   On the contrary, it seems to me an injustice to alter the scheme now so as to impose upon the landowner who has paid his proportion of the cost of the construction, a new burden which was never contemplated by the legislature.   For these and other reasons I respectfully dissent.

I am authorized to say that Mr. Justice STEVENS concurs in this dissent.

A motion for a rehearing was denied, with $25 costs, on June 21, 1926.