WARD, Respondent, vs. BABCOCK and others, Commissioners,. Appellants.

*February 22—March 14, 1916.*

*Drainage districts: Report of commissioners: Order requiring modifi-*
*cation: Appeal: Establishment of district, how far conclusive:*
*Assessment of benefits: Remonstrances: Hearing: Evidence: In-*
*structions to jury.*

1. Under sec. 1379—20, Stats., an appeal may be taken from an order
   of the circuit court requiring drainage commissioners to modify
   their report, before such modification is actually made or the re-
   port as modified is confirmed.
2. The establishment of a drainage district by the court pursuant to
   sec. 1379—17, Stats. 1911 (sec. 1379—14, Stats. 1915), conclu-
   sively establishes that all the lands included will be benefited
   and that the total benefits will exceed the total damages and cost
   of construction.
3. Upon the trial, pursuant to sec. 1379—20, Stats., of an issue as to
   benefits, arising on the remonstrance of a landowner, it was
   error to exclude testimony offered by the commissioners tending
   to explain the difference between the assessments for construc-
   tion and the assessments of benefits, and to refuse to give a re-
   quested instruction to the effect that the assessment of benefits.
   upon which the jury was required to pass constituted the basis
   upon which the assessment for construction should be appor-
   tioned and in no manner indicated the amount which the re-
   monstrant might be required to pay toward the cost of construc-
   tion.
4. In reviewing an assessment of benefits the jury should have be-
   fore it, as nearly as possible, all the data upon which the com-
   missioners acted.
5. Benefits in such cases, like values, may be proven not only by
   opinion but by relevant instances; and if other tracts of land
   bear substantially the same relation to the improvement as does
   the land of the remonstrant, the benefits assessed to such other
   tracts and acquiesced in by the owners thereof would have some
   probative force.
6. An instruction, in such a case, that the jury were not to consider
   any general benefits caused by the proposed ditches and drains,
   but only such actual special benefits, if any, as were caused to the
   lands of the remonstrant, and that general benefits are such as.
   the owner of the land enjoys in common with the public at large,.

and special benefits are such direct and actual benefits as are received exclusively by the land in question, was inappropriate and erroneous as tending to suggest to the jury that the lands of the remonstrant must have received special benefits over and above other lands in the drainage district.

7. If underdrainage of the remonstrant's land is necessary to the obtaining of beneficial results from the drainage scheme, evidence as to the cost of such underdrainage is relevant and material upon the question of benefits; and it was error in such a case to instruct the jury that in assessing benefits they should not consider any increase in market value which would be caused by drains so put in by the remonstrant.

APPEAL from an order of the circuit court for Walworth county: E. B. BELDEN, Circuit Judge. *Reversed.*

The appeal is from an order of the circuit court based on the verdict of a jury and modifying a report of the drainage commissioners with reference to benefits and damages accruing to the lands in said drainage district of the respondent, *Daniel Ward,* and ordering that the commissioners take further proceedings in that behalf, as provided by statute.

For the appellants there were briefs by *Whitehead & Matheson,* attorneys, and *Thompson, Myers & Kearney,* of counsel, and oral argument by *A. E. Matheson* and *Peter J. Myers.*

For the respondent there was a brief by *Tullar & Lockney,* attorneys, and *Henry Lockney* and *Jay W. Page,* of counsel, and oral argument by *Henry Lockney.*

PER CURIAM. The report of the commissioners under sec. 1379—18, Stats.; was attacked by respondent only in respect to the assessment of his damages, which was considered too low, and in respect to the assessment of his benefits, which he considered too high. The circuit court was authorized to "impanel a jury and take its verdict upon the trial of such issues." Sub. 2, sec. 1379—31*m:* "The court shall have an equitable supervision over all matters pertaining to drainage district proceedings with like force and effect as if the said proceeding were a case in equity." All other issues, if any, arising

·on any remonstrance are to be tried by the court. Sec. 1379—20. The same section provides that where there is no remonstrance, or where the finding is in favor of the validity of the proceedings, or after the report shall have been modified to conform to the findings, the court shall confirm the report, and the order of confirmation shall be final and conclusive unless within thirty days an appeal be taken to the supreme court. The language of the statute in this particular is as follows: "The proposed assessments [shall be] approved and confirmed, unless within thirty days an appeal be taken to the supreme court."

Here the first question for the consideration of this court arises. The respondent contends that this appeal cannot be taken until after approval and confirmation of the modified report. The statute is somewhat obscure, but the more accurate interpretation appears to be that approval and confirmation of the modified report do not precede an appeal to the supreme court, but that such approval and confirmation will follow the modification of the report by the commissioners unless within thirty days an appeal be taken to the supreme court, and in that case there shall be no approval or confirmation until after the appeal is disposed of. This seems the more reasonable interpretation, because no good purpose could be subserved by requiring the report, before it is finally decided on appeal, to be rewritten and then compelling the losing party to obtain an order of confirmation of said report so rewritten before the appeal to the supreme court from the final command to modify the same given by the circuit court in the special proceeding consisting of the trial of the remonstrances. This construction is confirmed by sec. 1379—20m, specifying when the confirmation should be made by the circuit court and enumerating certain past things, among them a remonstrance heard and determined and no appeal taken therefrom. This appeal, taken after the trial last mentioned and the entry of the final order on such trial and before the commis-

sioners rewrote their report to conform to the modification there ordered and before said rewritten report was approved or confirmed, must be held to have been taken in time.

The appellants complain of a mistrial of the issues framed pursuant to sec. 1379—20. They point out that the assessment district contains 4,040.82 acres, the number of parcels of land assessed for benefits is 176, of which the respondent, *Ward,* owned eight. The total estimated cost of construction is $61,476.99; the total benefits assessed to the several parcels of land constituting the drainage district are $142,802.36. The benefits assessed to the eight tracts of *Mr. Ward* by the commissioners were $7,438.76. The cost of construction is only about forty-two per cent. of the benefits assessed. This assessment of benefits on the lands of respondent was reduced by the verdict from $7,438.76 to $1,337, and forty-two per cent. of this latter sum would make respondent's share of the cost of construction, assuming the cost equals the estimate, $561.54, as against $3,124.25 which would follow the finding of the commissioners. This was quite an extraordinary cut in the respondent's assessment of benefits and must require an increase in the amounts which the other property owners will respectively be required to pay to defray the cost of the work.

Keeping in mind that a public purpose is essential to support all taxation and that in addition to this a benefit at least equal to the amount of his tax must accrue to the owner of property before he can be charged with a special assessment in these proceedings, we can better understand the nature of the statute which requires that the whole cost of construction and the total benefits be found, and which also provides that in case the cost exceeds these benefits no drainage district shall be established. The establishment of a drainage district properly made by the court conclusively establishes that all the lands included will be benefited and that the aggregate of such benefits will exceed the damages and cost of construc-

tion.   It is not contemplated that assessments should be col-
lected up to the amount of the benefits derived, except where
absolutely necessary to complete the public improvement.
The order creating the district is final and conclusive on the
propositions that the proposed drainage district is a public
improvement, that the public welfare and health will be ad-
vanced by its creation, and that it is established under the
law as a drainage district.   In the establishment of this dis-
trict and in the ascertainment of the cost of construction and
the amount of benefits the circuit court exercised an equitable
jurisdiction over the proceeding.   The statute provides that
the damages to the land caused by the construction of the im-
provement and the benefits flowing from such construction
are questions which may be tried before a jury.   But after
the district is established, the ascertainment of damages and
benefits must be on the hypothesis that the total benefits ex-
ceed the total damages and cost of construction.

The learned circuit judge excluded testimony offered by the
commissioners tending to explain the difference between the
assessments for construction and the assessments of benefits,
and refused an instruction requested to the effect that the as-
sessment of benefits upon which the jury was required to pass
constituted the basis upon which the assessment for cost of
construction should be apportioned and in no manner indi-
cated the amount which the respondent might be required to
pay toward such cost of construction.   Instead of that he in-
structed the jury as follows: "These questions must be de-
termined entirely apart from and uninfluenced by the matter
of cost of construction of the proposed drains and ditches,
which is not for consideration in this case whatever."

We think these rulings were erroneous and probably ac-
counted for the remarkable difference in the estimate of bene-
fits by the commissioners and by the jurors.   In reviewing
the judgment of the commissioners as to the amount of bene-
fits, the jury should have before it as near as possible all the

data upon which the commissioners acted. An expensive, well-constructed system of drainage, backed by ample resources for its construction and upkeep, might confer greater benefits on adjacent lands than one not so complete. Besides, benefits in such cases, like values, may be proven not only by opinion but by relevant instances. If other tracts of land bore the same or substantially the same relation to this public improvement as did the lands of the respondent, the benefits assessed to the former lands and acquiesced in by the owners thereof would have some probative force on the inquiry. In condemnation proceedings, when we seek to ascertain the market value of land taken, proof of the price at which other similar tracts were sold within a reasonable time prior to the taking is considered competent.

We are also of opinion that the court erred in its instructions relative to general benefits. There was no such question in controversy. The inquiry was, How much were these lands benefited by the construction of the drains in question? To say to the jury that they were not to consider any general benefits caused by the proposed ditches and drains, but only to take into consideration and assess upon the lands of the remonstrant such actual special benefits, if any, as they might find from the evidence were caused to the lands of remonstrant, had a tendency to suggest to the jury that the lands in question must have received special benefits over and above other lands in the drainage district. To say to the jury that general benefits are such benefits as the owner of the land in question enjoys in common with the public at large and special benefits are such direct and actual benefits as are received exclusively by the land in question and not by the public or lands generally, is inappropriate to the question before the jury. The public or lands generally at an earlier stage of the proceeding were excluded from consideration, and to interpose this question and lay it before the jury at the trial had a tendency to mislead.

We are of the opinion that the court erred in rejecting the evidence offered by the commissioners as to the cost of under-draining *Ward's* lands to connect with the completed drains of the district and in giving the instructions on this subject. The court instructed the jury:

"Whether *Mr. Ward* shall connect with the proposed drainage system by his own underdrainage is entirely for him to say. . . . There has been some evidence of a plan of internal drainage which might be used by remonstrant in draining or improving his lands. . . . But in assessing benefits you should not take into consideration any increase in market value, if any, which would be caused by any drains so put in by remonstrant, for that would be the result of the expenditure of his own money. . . ."

The question of the cost to remonstrant in adopting a system of internal drainage by underdraining his land in connection with the general drains of the district is material in ascertaining what the amount of the benefits, if any, would be to remonstrant. If underdrainage is necessary to obtain beneficial results from the drainage scheme, then the cost thereof is a relevant and material item in ascertaining whether the landowner has any benefits above his damage. Such cost is an item of expense to the landowner to secure the beneficial result from the drainage system and has evidential value in determining the question of benefits. The evidence was improperly excluded from the case.

The court gave the following instruction:

"Benefits are determined by the difference in fair market value of the lands in question June 25, 1913, without the proposed drainage system, and with it completed, without regard to cost of construction of the general system, cost to the remonstrant of connecting therewith, if he chooses so to do, or damages, if any, resulting to remonstrant by reason of the construction of the proposed drainage system in and upon his lands."

Generally speaking, the error of the circuit court seems to

have been in regarding the distinction between general and special benefits, sometimes highly proper, as applicable to the questions before the jury on this special proceeding, and in considering that benefits could only be estimated or arrived at by the very narrow and technical process of considering only evidence bearing directly upon the point, when he should have thrown open the case for the widest investigation based on all data available to the commissioners in fixing the amount of benefits.

The order is reversed, and the cause remanded for further proceedings according to law. Costs are allowed to appellants.