McMahon, Appellant, vs. Lower Baraboo River Drainage District, Respondent.

*September 18—October 14, 1924.*

*Drains: Expenditures and benefits: Nature of district: Governmental agency: Liability for negligence: Rights of injured person.*

1. The drainage district law (secs. 1379—10a to 1379—40, Stats. 1919) clearly contemplates that the expenditures and cost of construction of a drainage district shall not exceed the amount of the assessed benefits. p. 613.
2. A drainage district organized under secs. 1379—10a to 1379—40, Stats. 1919, is a governmental agency not chargeable with acts of negligence committed by the drainage com-

missioners; and where the failure to complete the construction of the ditch resulted in the discharge of water, silt, etc., on plaintiff's land, to his damage, the district was not liable. p. 615.

3. The court cannot give a remedy to one injured by the exercise of a governmental power where the law gives none. p. 615.

APPEAL from an order of the circuit court for Columbia county: CHESTER A. FOWLER, Circuit Judge. *Affirmed.*

Appeal from an order sustaining a demurrer to the plaintiff's complaint. The complaint alleges that the defendant drainage district was established under an order of the circuit court for Columbia county dated October 3, 1919; that the petitioner at all times objected to the organization and establishment of the district; that by the assessment it appeared that the benefits would amount to $45,944.71 and the cost of construction found to be $30,629.81; that thereupon the commissioners advertised for bids; that the amount of the lowest bid received was in excess of the amount of the assessed benefits; that thereupon certain property owners agreed to pay a bonus or part of the cost of the construction, the bid of the contractors was reduced, and a contract entered into.

The complaint further alleges that the plan approved under the law was defective; that the drain was not constructed in accordance with the plan; that the ditch was dug deeper and wider than provided for in the plans at the upper end, the amount of yardage to be removed was materially increased, and there were other defects of construction; that on or about November 29, 1922, the construction of the ditch was abandoned; that it can only be completed by the expenditure of a large amount in excess of the total benefits; that by reason of the premises the flow of water has been accelerated so that a greatly increased amount of water is brought to plaintiff's lands in times of flood or increased flow of water; that by reason thereof and the failure of the district to complete the ditch, the water has spread

out and overflowed plaintiff's land, depositing thereon logs, stumps, silt, and causing other damage by washing and flooding, to the amount of $5,000.

The defendant district demurred to the complaint, and from the order sustaining the demurrer the plaintiff appeals.

For the appellant there was a brief by *Rogers & Rogers* of Portage, and oral argument by *H. B. Rogers.*

For the respondent there was a brief by *Naylor & McCaul* of Tomah, and oral argument by *Wm. R. McCaul.*

ROSENBERRY, J. The trial court was of the opinion that the drainage district in constructing its works is performing a governmental function (*Hart v. Neillsville,* 125 Wis. 546, 552, 553, 104 N. W. 699), and that the situation as presented by the facts in this case is clearly distinguishable from the facts set forth in *Hart v. Neillsville,* 141 Wis. 3, 123 N. W. 125, where a municipality was held liable for failure to properly construct a surface-water drain, and therefore held that the district was not liable.

It is very clear from a reading of the drainage law under which this district was organized—secs. 1379—10a to 1379—40, Stats. 1919 (this particular law will hereafter be referred to as the drainage district law without further citation)—that under the facts set forth in the complaint the defendant drainage district seems to have come to a legal *cul-de-sac.* The law clearly contemplates that the expenditures and cost of construction as defined in the statute shall not exceed the amount of the assessed benefits. In *Ward v. Babcock,* 162 Wis. 539, 156 N. W. 1007, it was held that when, upon the preliminary hearing, the jurisdictional facts have been ascertained, and no appeal has been taken from the finding of the court, the facts so found are conclusively established. It would appear, therefore, from the allegations of the complaint that the district was legally organized, but that thereafter work was undertaken of such a character as to make the cost of the improvement exceed

the amount of the assessed benefits, resulting in the failure to complete the drain and consequent damages to plaintiff's property.

There is considerable discussion as to the nature of the drainage district. Under the statute of 1917 (sec. 1379—14) it is declared:

"When the court shall appoint such commissioners said drainage district shall be a fully organized drainage district with the right to sue and be sued and with all of the rights and powers in the drainage district law to such districts given, together with all of the usual powers of a public corporation and in addition the power, subject to the approval of the court, to borrow the money necessary to do all work preliminary to the confirmation of the assessment of benefits hereinafter provided for."

In the law under which the defendant district was organized there is no declaration corresponding to that found in the Statutes of 1917. As was said in *Strawberry Hill Land Corp. v. Starbuck,* 124 Va. 71, 97 S. E. 362, a discussion of the exact status of such districts is an academic question. See Ann. Cas. 1915C, 9; 9 Ruling Case Law, 642, 644; 60 L. R. A. 161.

A careful perusal of the drainage district law indicates that the legislature intentionally omitted any declaration as to the corporate character of a district to be organized under it. Under the statute the drainage district is probably a *quasi*-municipal corporation with very limited powers, designed to discharge a carefully defined and limited duty in the manner particularly described in the statute. All facts are to be found by the court, and almost everything done by the commissioners must be approved by the court. If the functions of a *quasi*-municipal corporation can be limited to a truly governmental function, it would seem that that end had been achieved in the enactment of the drainage district law. *Sullivan v. School Dist.* 179 Wis. 502, 191 N. W. 1020. This conclusion is further strengthened by

the fact that there is an express provision making the district liable for damage done to property without the district.

Under the drainage district law the commissioners appointed by the court are required to make a survey and submit a detailed plan to the court. Upon a hearing after notice the court passes upon the feasibility of the plan. All persons in interest have a right to appear and be heard upon the merits. This would seem, under the doctrine laid down in *Ward v. Babcock,* 162 Wis. 539, 156 N. W. 1007, to foreclose further question as to the sufficiency and adequacy of the plan. It is urged in plaintiff's behalf that he at all times opposed the organization of the district, the adoption of the plan, and has done everything he could do to protect his interests, and therefore that the law should afford him a remedy. The question of whether or not he has any remedy is not before us. The question under consideration here is whether or not he has a right to recover damages from the district. Even though the law operates harshly in a particular case, the state has in its capacity as a sovereign, for the promotion of the public health and general welfare, ordained the procedure to be followed in cases of this kind, and if by reason of the provisions of the statute the plaintiff has sustained a loss, the courts cannot give a remedy where the law gives none.

The drainage district being the only party defendant, and as a governmental agency not being chargeable with acts of negligence, if any, committed by the commissioners, no further question is presented by the record.

*By the Court.*—The order appealed from is affirmed.