TRINITY PETROLEUM, INC., Plaintiff-Respondent,

v.

SCOTT OIL COMPANY, INC., Defendant-Appellant.†

Court of Appeals

*No. 2005AP2837. Submitted on briefs August 9, 2006.
—Decided September 20, 2006.*

2006 WI App 219

(Also reported in 724 N.W.2d 259.)

† Petition to review filed.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Alan H. Marcuvitz* and *Juan S. Ramierez*, of *Michael, Best & Friedrich, LLP*, of Waukesha.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *Douglas W. Rose*, of *Rose & Dejong, S.C.*, of Brookfield.

Before Snyder, P.J., Nettesheim and Anderson, JJ.

¶ 1. NETTESHEIM, J. Wisconsin Stat. §§ 802.05 and 814.025 (2003–04),[1] addressing frivolous claims, were repealed and § 802.05 was recreated effective July 1, 2005.[2] This appeal requires that we address the impact of the new § 802.05 on litigation begun while the former statutes still were in effect.

¶ 2. After summary judgment was granted in its favor, Scott Oil Company moved for frivolousness sanctions against Trinity Petroleum, Inc., pursuant to Wis. Stat. §§ 802.05 and 814.025. The circuit court denied the motion because those statutes had been repealed by the time the motion for sanctions was filed and Scott Oil did not comply with the procedural mandates of newly recreated § 802.05. Scott Oil argues that the circuit court erred when it applied the new rule retroactively. We disagree. We conclude that the new § 802.05 is a procedural statute, giving it retroactive effect. We also hold that the new "safe harbor" provision of the rule precludes a party from serving its motion for sanctions postjudgment. We affirm.

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

[2] The effective date of S. Ct. Order 03–06 was March 31, 2005. The order announced that the changes to Wis. Stat. §§ 802.05 and 814.025 would become effective on July 1, 2005. S. Ct. Order 03–06, 2005 WI 38, 278 Wis. 2d xiii, xiv (eff. Mar. 31, 2005).

## BACKGROUND

¶ 3. The facts relevant to the appeal are brief and undisputed. Scott Oil and Trinity had a contractual agreement under which Trinity would transport Scott Oil's petroleum products. Problems arose, Scott Oil terminated the contract and Trinity sued for breach of contract. On April 5, 2005, Scott Oil moved for summary judgment. The court granted the motion at a hearing on July 5.

¶ 4. At the conclusion of the summary judgment hearing, Scott Oil orally moved for attorney fees on the grounds that Trinity's action was frivolous. Scott Oil had not raised the issue of frivolousness in its pleadings or in its brief in support of summary judgment, although it had invoked WIS. STAT. § 814.025 in the last sentence of the "Conclusion" of its April 26, 2005 brief in response to Trinity's motion to quash and deny Scott Oil's summary judgment motion. The court denied the oral request, observing that because the matter never had been pled, it was not properly in front of the court. The court advised Scott Oil, however, that if it wished to renew the request it should file a motion in that regard. In this exchange, neither Scott Oil nor the circuit court referenced any specific statute in regard to attorney fees.[3]

¶ 5. On July 21, Scott Oil moved for attorney fees and costs under WIS. STAT. §§ 802.05 and 814.025. It did not serve upon Trinity a motion describing the specific conduct it considered impermissible. The circuit court

---

[3] The transcript does not support Scott Oil's appellate assertion that at the summary judgment hearing it made a "request for attorneys' fees under WIS. STAT. §§ 814.025 and 802.05" and that the circuit court "invited Scott Oil to file a separate Motion for Fees pursuant to §§ 814.025 and 802.05."

denied the motion because the supreme court had repealed the two statutes and recreated § 802.05 effective July 1. The circuit court observed that the supreme court's action had come about upon joint petition of the Civil Trial Counsel of Wisconsin, the Wisconsin Academy of Trial Lawyers, the Litigation Section of the State Bar and the Wisconsin chapter of the American Board of Trial Advocacy, and after a public hearing.

¶ 6. The circuit court acknowledged that the new rule did not explicitly state whether it was to be applied retroactively or prospectively only. It observed, however, that the petition proposing the changes had "been around and in the hopper for a long period of time" and that, while the order was effective July 1, it was "important to note" that actual passage of the rule announcing the change was on March 31, even before Scott Oil had filed its motion for summary judgment. The circuit court observed that, like Federal Rule of Civil Procedure 11 (Rule 11), the new law focuses on deterrence of frivolous claims and therefore mandates specific procedures to permit an offending matter to be withdrawn or corrected.

¶ 7. The circuit court then stated its belief that under "the old law . . . this was not an action that was well[-]grounded in fact or in law," but nonetheless denied Scott Oil's request for sanctions because it had failed to comply with the "very specific . . . safe harbor" procedural requirements of the new WIS. STAT. § 802.05. The court also expressed its belief that the supreme court intended the new rule to apply to "any and all actions whether in effect at that time or that would have been commenced after July 1, 2005." Scott Oil appeals.

## DISCUSSION

¶ 8.    Neither the summary judgment nor the determination of frivolousness is challenged on appeal, leaving but one issue:    what effect do the repeal of the prior frivolous action statutes and the recreation of a new one have on an action for sanctions filed after the statutes changed, but which relates to conduct predating the change? Scott Oil insists the new rule should not apply. It asserts that WIS. STAT. § 990.04 "unambiguously require[s]" using the repealed statutes, since the new WIS. STAT. § 802.05 lacks an express provision for retroactive application. Trinity responds that the new rule is a procedural statute and thus must be applied retroactively and that the old law is simply irrelevant because it no longer was in effect when Scott Oil moved for sanctions. Our task, therefore, is to answer whether the new § 802.05 is procedural or substantive such that the circuit court's retroactive application of it can be sustained. Whether a statute merits retroactive or prospective application is a question of law which we decide de novo. *Modica v. Verhulst*, 195 Wis. 2d 633, 639, 536 N.W.2d 466 (Ct. App. 1995).

*Background of New WIS. STAT. § 802.05*[4]

¶ 9.    WISCONSIN STAT. §§ 802.05 and 814.025 were repealed, and § 802.05[5] was recreated effective July 1,

---

[4] For an informative article on the supreme court's repeal of WIS. STAT. §§ 802.05 and 814.025 and recreation of § 802.05, *see* Janine P. Geske & William C. Gleisner III, *Frivolous Sanction Law in Wisconsin,* WISCONSIN LAWYER, Vol. 79, No. 2 at 16 (Feb. 2006).

[5] The recreated WIS. STAT. § 802.05 provides in relevant part:

**802.05 Signing of pleadings, motions, and other papers; Representations to court; Sanctions. (1) Signature.** Every pleading, written motion, and other paper shall be signed by at least one attorney of record in the attorney's individual name, or, if the party is not represented by an attorney, shall be signed by the party. Each paper shall state the signer's address and telephone number, and state bar number, if any. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. An unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney or party.

**(2) Representations to Court.** By presenting to the court, whether by signing, filing, submitting, or later advocating a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, all of the following:

**(a)** The paper is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

**(b)** The claims, defenses, and other legal contentions stated in the paper are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

**(c)** The allegations and other factual contentions stated in the paper have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

**(d)** The denials of factual contentions stated in the paper are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

**(3) Sanctions.** If, after notice and a reasonable opportunity to respond, the court determines that sub. (2) has been violated, the court may impose an appropriate sanction upon the attorneys, law firms, or parties that have violated sub. (2) or are responsible for the violation in accordance with the following:

patterned after RULE 11, the new § 802.05 adopts the language of Rule 11 as amended in 1993. S. CT. ORDER 03–06, 278 Wis. 2d at xvi-xvii. As with the interpreta-

(a) **How initiated. 1. 'By motion.'** A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate sub. (2). The motion shall be served as provided in s. 801.14, but shall not be filed with or presented to the court unless, within 21 days after service of the motion or such other period as the court may prescribe, the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. If warranted, the court may award to the party prevailing on the motion reasonable expenses and attorney fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.

**2. 'On court's initiative.'** On its own initiative, the court may enter an order describing the specific conduct that appears to violate sub. (2) and directing an attorney, law firm, or party to show cause why it has not violated sub. (2) with the specific conduct described in the court's order.

(b) **Nature of Sanction; Limitations.** A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subds. 1. and 2., the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation subject to all of the following:

**1.** Monetary sanctions may not be awarded against a represented party for a violation of sub. (2)(b).

**2.** Monetary sanctions may not be awarded on the court's initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party that is, or whose attorneys are, to be sanctioned.

(c) **Order.** When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed.

675

tion of a statute enacted by the legislature, interpretation of a statute promulgated under the supreme court's rule-making authority presents us with a question of law that we review independently of the determination of the circuit court. *Waters v. Pertzborn*, 2001 WI 62, ¶ 16, 243 Wis. 2d 703, 627 N.W.2d 497. The goal of statutory interpretation is to ascertain and give effect to the intent of the enacting body. *Id.* We are greatly assisted here because explanatory comments are incorporated in the supreme court order creating the new rule. S. CT. ORDER 03–06, 278 Wis. 2d at xvi-xxvi.

¶ 10.   The new WIS. STAT. § 802.05 makes a number of changes to the former frivolous action law. Two of significance are relevant here. The most unique, and arguably the most important, is the "safe harbor" provision. It provides that, before being filed with the court, a specifically stated motion for sanctions first must be served upon the party alleged to have engaged in the challenged conduct to afford an opportunity to withdraw or correct its action. Sec. 802.05(3)(a)1. Only if the other party does not oblige within twenty-one days may the motion then be filed with the court. *Id.*

¶ 11.   The second change of note is that sanctions no longer are mandatory, nor are they limited to costs and attorney fees. WIS. STAT. § 802.05(3)(b). Whereas the repealed WIS. STAT. § 814.025(1) provided that upon a finding of frivolousness the court "shall award" costs and reasonable attorney fees, under the new rule the court "may impose an appropriate sanction," § 802.05(3), which must be "limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Sec. 802.05(3)(b).

676

¶ 12.    Scott Oil first argues that the new rule must be applied prospectively—in other words, that the "old law" should apply—because WIS. STAT. § 990.04 plainly requires it. Section 990.04 addresses the construction of repealed statutes and provides that liabilities or rights of action which accrue under a statute before its repeal shall be preserved after the repeal "unless specially and expressly remitted, abrogated or done away with by the repealing statute." *Id.*

¶ 13.    WISCONSIN STAT. § 990.04 does not salvage Scott Oil's position. Section 990.04 applies to a fully accrued right, not to a merely inchoate right which could ripen into a right preserved by the statute only upon the happening of a further event. *See Waddell v. Mamat*, 271 Wis. 176, 181, 72 N.W.2d 763 (1955) (addressing WIS. STAT. § 370.04, the predecessor statute). *See also Niesen v. State*, 30 Wis. 2d 490, 491, 493, 141 N.W.2d 194 (1966) (affirming the trial court's conclusion that a claim submitted to the state before a statute's repeal preserved the claimant's action for damages after the repeal). At the time WIS. STAT. §§ 802.05 and 814.025 were repealed and § 802.05 recreated, Scott Oil had not filed a motion for sanctions nor had any finding of frivolousness been made. Therefore, Scott Oil's "right," if any, to sanctions was at best an inchoate right. There was no action or accrued right to preserve.

¶ 14.    Moreover, Scott Oil's argument presumes that WIS. STAT. § 802.05 is a substantive statute to be given prospective effect. True, prospective application

677

is the general rule. *Snopek v. Lakeland Med. Ctr.*, 223 Wis. 2d 288, 293, 588 N.W.2d 19 (1999). Two well-defined exceptions exist, however: (1) if by express language or necessary implication the statutory language reveals the legislative intent that it apply retroactively or (2) if the statute is procedural or remedial in nature, rather than substantive. *Bill' s Distrib., Ltd. v. Cormican*, 2002 WI App 156, ¶¶ 9–10, 256 Wis. 2d 142, 647 N.W.2d 908. Section 802.05 does not expressly state or necessarily imply retroactive application. Accordingly, we must determine whether the rule is procedural or substantive.

¶ 15. A statute that "creates, defines or regulates rights or obligations . . . is substantive—a change in the substantive law of the state." *City of Madison v. Town of Madison*, 127 Wis. 2d 96, 102, 377 N.W.2d 221 (Ct. App. 1985). One that simply prescribes the method or "legal machinery" used in enforcing a right or remedy, however, is procedural. *Id.* (citation omitted).

¶ 16. For several reasons, we conclude that the new rule is procedural. Perhaps most obviously, Wis. Stat. § 802.05 is a rule and not a legislatively enacted statute. Our supreme court expressly adopted it from the federal civil procedure code and analogously situated it in our own civil procedure code. S. Ct. order 03–06, 278 Wis. 2d at xvi-xvii. Incorporated in the supreme court order creating the new rule are explanatory comments. *Id.* at xvi-xxvi. In them, the court stated that it was acting pursuant to its rule-making authority under Wis. Stat. § 751.12 to regulate, simplify and harmonize the rules of pleading, practice and procedure. S. Ct. order 03–06, 278 Wis. 2d at xvii. Committee comments to supreme court rules are not

binding but they may be used to determine the rule's application. *Estate of Burd v. Theisen*, 820 N.E.2d 613, 615 (Ill. App. Ct. 2004).

¶ 17. Order 03–06 did not adopt the Federal Advisory Committee Notes for the 1993 Amendment to Rule 11, but included their full text "for information purposes." S. CT. ORDER 03–06, 278 Wis. 2d at xvii. The Notes remind us that "the purpose of Rule 11 sanctions is to deter rather than to compensate." FED. R. CIV. P. 11 advisory committee's note (1993 Amendment). Because WIS. STAT. § 802.05 is patterned after Rule 11 and our supreme court included the Federal Advisory Committee Notes in its comments, examining the development of Rule 11 is instructive. We also may turn to federal case law interpreting Rule 11 as persuasive authority. S. CT. ORDER 03–06, 278 Wis. 2d at xvii; *Jandrt v. Jerome Foods, Inc.*, 227 Wis. 2d 531, 549, 597 N.W.2d 744 (1999).

¶ 18. Frivolous filings adversely impact more than the particular conflict being litigated. They clog court dockets, lessen public trust in the integrity of the legal system, and damage the image of the legal profession. Jeff Goland, *In re Pennie & Edmonds: The Second Circuit Returns to a Subjective Standard of Bad Faith for Imposing Post-Trial Sua Sponte Rule 11 Sanctions*, 78 ST. JOHN'S L. REV. 449, 450 (2004) (footnotes omitted). In 1938, Rule 11 was promulgated to provide for the striking of pleadings and the imposition of disciplinary sanctions to check abuses in the signing of pleadings. FED. R. CIV. P. 11 advisory committee's note (1983 Amendment). Under the 1938 version, sanctions were discretionary with the court, and included striking of the pleadings and appropriate sanctions. Georgene M. Vairo, *Rule 11: A Critical Analysis*, 118 F.R.D. 189, 190 (1988). That early effort at stemming baseless filings

was largely ignored. *See, e.g., Business Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 892 F.2d 802, 808 (9th Cir. 1989), *aff'd*, 498 U.S. 533 (1991) (observing that there are only twenty-three reported cases from 1938 to 1976 in which parties sought sanctions).

¶ 19. Accordingly, the rule was substantially amended in 1983 to focus the court's attention on the need to impose sanctions for pleading and motion abuses. FED. R. CIV. P. 11 advisory committee's note (1983 Amendment). Sanctions, though not necessarily attorney fees, were made mandatory to reduce courts' reluctance to impose them. *Brown v. Federation of State Med. Bds.*, 830 F.2d 1429, 1435 (7th Cir. 1987), *abrogated on other grounds, Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928 (7th Cir. 1989). Whether viewed as compensatory or punitive, mandatory sanctions were intended to carry out the policy of deterring frivolous filings that result in unnecessary delay and expense. *See Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir. 1987) (en banc). Although the 1983 version raised concerns that it would spawn satellite litigation, it still was deemed necessary to "give effect to the Rule's central goal of deterrence." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990); *see* FED. R. CIV. P. 11 advisory committee's note (1993 Amendment) (stating that the purpose of the revision was to remedy problems that arose after the 1983 revision, and that the revision "should reduce the number of motions for sanctions presented to the court").

¶ 20. Those concerns proved to be well-founded, and the rule again was revised in 1993. The amended rule made sanctions discretionary with the court, but retained the principle that litigants have an obligation to the court to refrain from conduct that frustrates the aims of FED. R. CIV. P. 1, which are to "secure the just,

speedy, and inexpensive determination of every action." FED. R. CIV. P. 11 advisory committee's note (1993 Amendment); FED. R. CIV. P. 1.

¶ 21. At its heart, then, the frivolous action statute is a rule of judicial administration. The case law and the committee notes to the 1983 and 1993 amendments expressly or implicitly repeat the refrain that the central purpose of Rule 11 is to deter baseless filings and streamline the administration and procedure of the courts. *See Cooter & Gell*, 496 U.S. at 393; *Divane v. Krull Elec. Co.*, 200 F.3d 1020, 1030 (7th Cir. 1999); *Jimenez v. Madison Area Technical Coll.*, 321 F.3d 652, 656 (7th Cir. 2003); and FED. R. CIV. P. 11, advisory committee's note (1993 Amendment). Imposing sanctions at first was discretionary, then mandatory, and then discretionary once more, reflecting efforts made over the years to staunch frivolous filings, not for punitive or compensatory reasons in a particular case, but for the larger purpose of enhancing judicial efficiency. *See Brown*, 830 F.2d at 1439 (stating that punishment of a Rule 11 violation is part of a court's responsibility for securing the judicial system's effective operation); *see also Divane*, 200 F.3d at 1030 (stating that the purpose of Rule 11 sanctions is to deter rather than to compensate).

¶ 22. We therefore reject Scott Oil's contention that attorney fee awards made pursuant to frivolous action statutes are substantive rights. Various other courts agree. *See, e.g., Midwest Grain Prods. of Ill., Inc. v. Productization, Inc.*, 228 F.3d 784, 792 (7th Cir. 2000) (stating that rules governing the award of attorney fees do not affect a party's substantive rights but are more akin to rules that affect the conduct of trial or the remedy available); *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 529 (6th Cir. 2002)

(stating that a general state statute authorizing an award of attorney fees to a party adversely affected by frivolous conduct is procedural rather than substantive in nature because the award of attorney fees is based upon the party's conduct in filing and litigating the claim rather than upon the claim's underlying merits); and *McCormack v. Town of Granite*, 913 P.2d 282, 285 (Okla. 1996) (stating that statutes relating to the award of attorney fees to a prevailing party are procedural and are subject to retrospective operation).

¶ 23. Viewing the current Rule 11 and WIS. STAT. § 802.05 in this total context, we conclude that § 802.05 is a procedural rule, not a substantive statute. The vigorous dissents to Order 03–06 shore up this conclusion. Justices Prosser, Roggensack and Wilcox opined that the mandatory attorney fee aspect of the repealed WIS. STAT. § 814.025 embodied substantive rights for litigants. S. CT. ORDER 03–06, 278 Wis. 2d at xxvi, xxviii. A fair deduction from these statements is that the matter was fully debated and that the majority deems the rule procedural. Retroactive application of procedural rules is presumed. *State ex rel. Brown v. Bradley*, 2003 WI 14, ¶ 13, 259 Wis. 2d 630, 658 N.W.2d 427.

¶ 24. Scott Oil also seizes on the language of the dissents, particularly Justice Roggensack's "strongly voice[d] [] opinion that the Supreme Court overstepped its statutory authority in repealing [WIS. STAT.] § 814.025." This argument holds no sway. The supreme court's authority is not before us on this appeal, nor is it ours to decide. Only the supreme court has the power to overrule, modify or withdraw language from a previous supreme court case. *Cook v. Cook*, 208 Wis. 2d

166, 189, 560 N.W.2d 246 (1997). The majority opinion, not the dissent, is the law, and we are bound by it.

¶ 25. Therefore, in regard to filing a motion for sanctions, we conclude that the new rule is procedural and apply it retroactively.[6]

## Safe-Harbor Provision

¶ 26. Having determined that the new rule is procedural, we next must consider Scott Oil's suggestion that it should be excused from the mandates of the safe-harbor provision once summary judgment has been granted. The recreated WIS. STAT. § 802.05(3)(a)1. provides that a motion for sanctions "shall not be filed with or presented to the court unless, within 21 days after service of the motion or such other period as the court may prescribe, the challenged [pleading] is not withdrawn or appropriately corrected."

¶ 27. Scott Oil filed its motion for sanctions against Trinity fifteen days after being granted sum-

---

[6] The Seventh Circuit Court of Appeals has held that applying on appeal the amended version of Rule 11 to pending cases is not "just and practicable" where the conduct, motions and decision of the trial court occurred before the new rule's effective date. *See, e.g., Land v. Chicago Truck Drivers, Helpers and Warehouse Workers Union (Indep.) Health and Welfare Fund,* 25 F.3d 509, 516 (7th Cir. 1994). The "just and practicable" language comes from the Supreme Court order amending Rule 11. 146 F.R.D. 401, 404 (Apr. 22, 1993).

We also emphasize that the claimed frivolousness of Trinity's conduct is not before us. Accordingly, we do not decide whether or not the revised standards of conduct of WIS. STAT. § 802.05 (from "good faith" to a more objective "reasonableness" standard) apply retroactively to assess conduct occurring before the new rule's effective date.

mary judgment. The circuit court denied the motion for sanctions because Scott Oil had not first served the motion on Trinity. Scott Oil asks: "What could [Trinity] have withdrawn from at that point post summary judgment?"

¶ 28.   The short answer is, "Nothing." Yet we disagree that the provision is any less mandatory. The language of the new rule is unequivocal:   "The motion . . . shall not be filed with or presented to the court *unless,* within 21 days after service of the motion or such other period as the court may prescribe, the challenged [pleading] is not withdrawn or appropriately corrected." WIS. STAT. § 802.05(3)(a)1. (emphasis added). The Rule 11 Advisory Committee notes state equally plainly that "[g]iven the 'safe-harbor' provisions . . . a party cannot delay serving its Rule 11 motion until conclusion of the case." FED. R. CIV. P. 11 advisory committee's note (1993 Amendment). The timing may not have favored Scott Oil, but we conclude the mandates of the new rule apply.

¶ 29.   Other courts agree. In *Ridder v. City of Springfield,* 109 F.3d 288 (6th Cir. 1997), for example, the Sixth Circuit Court of Appeals stated that "[b]y virtue of its nature, the 'safe harbor' provision cannot have any effect if the court has already rendered its judgment in the case" because the offending party could not withdraw the challenged claim. *Id.* at 296–97. The court held that, although "futil[e]," compliance still was necessary and that by waiting to file the motion until after the entry of summary judgment, the movant had forfeited the opportunity to receive an award of Rule 11 sanctions. *Id.* at 297. *See also Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.,* 369 F.3d 385, 389 (4th Cir. 2004) (Rule 11 is unavailable to a movant who files for sanctions without serving timely safe-harbor letter),

684

and *Barber v. Miller*, 146 F.3d 707, 711 (9th Cir. 1998) (holding that a party cannot wait until after summary judgment is granted to move for sanctions under Rule 11).

¶ 30. Scott Oil then argues:

> According to the trial court . . . Scott Oil should have proceeded under the future law . . . essentially admonish[ing] Scott Oil for arguing under the only law in force during the pendency of this action. The notion that Scott Oil should have proceeded under the recreated § 802.05 because the judge "was aware of what the Supreme Court was listening to and thinking about . . . what it was doing and that they [the changes] were coming down the pipeline, which they did in fact do on July 1, 2005," is without merit.

Had it "argued under the new § 802.05 in March of 2005," it continues, it well may have faced a similar claim of frivolousness by Trinity. Besides the disrespectful tone it takes toward the circuit court and Judge Kieffer himself, Scott Oil is wrong. We do not think Scott Oil's position was quite as dire as it suggests.

¶ 31. The circuit court did not advise Scott Oil to argue under the new rule in March. The court's only reference to March 2005 was to note that Order 03–06 was effective on March 31, giving three months' notice of the impending changes in the law. Given the widespread publicity to and input from the Wisconsin bar, we concur that Scott Oil's attorneys should have been on notice that change was afoot and proceeded accordingly.

¶ 32. While not conceding that the new rule applies, Scott Oil argues that, in effect, it complied with the safe-harbor provision. In its reply brief to its motion for sanctions, for instance, it contended that Trinity repeatedly was put on notice yet never attempted to

685

cure or withdraw. Again on appeal, it contends that it argued Trinity's frivolity "at virtually every juncture."[7]

¶ 33. Warnings are not motions. *Barber*, 146 F.3d at 710. "To stress the seriousness of a motion for sanctions and to define precisely the conduct claimed to violate the rule, the revision provides that the 'safe harbor' period begins to run only upon service of the motion." FED. R. CIV. P. 11 advisory committee's note (1993 Amendment). It would "wrench both the language and the purpose of the [safe-harbor] amendment to the Rule to permit an informal warning to substitute for service of a motion." *Barber*, 146 F.3d at 710. Therefore, Scott Oil should have gone a step further and formalized those arguments with a motion for sanctions under the old law before July 1, 2005. Alternatively, on or after July 1, it could have served Trinity with a specifically drawn motion prior to the summary judgment hearing.

¶ 34. We also disagree that the change in the law permitted Trinity to "escape liability" due to the "fortuitous rescheduling" of the summary judgment hearing. A court may enter an order on its own initiative and impose an appropriate sanction. WIS. STAT. § 802.05(3)(a)2. This does not require safe-harbor notice. *See Barber*, 146 F.3d at 711 (addressing principle in the context of RULE 11).

---

[7] Scott Oil asserts that it argued frivolousness "at virtually every juncture and every opportunity to put that in the pleadings . . . ." The record reveals nothing before April 26, 2005— and that was only in the final sentence of the Conclusion of its brief in response to Trinity's motion to quash—where, as an alternative to its request to deny the motion to quash costs, it requested attorney fees pursuant to WIS. STAT. §§ 804.12 and 814.025.

¶ 35. Even though the law operates harshly in a particular case, where the supreme court ordains a certain procedure to foster a larger good, the court cannot give a remedy where the law provides none. *See McMahon v. Lower Baraboo River Drainage Dist.*, 184 Wis. 611, 615, 200 N.W. 366 (1924).

### CONCLUSION

¶ 36. Although in a sense this is a case of first impression, we are aided by analogous federal law and the insights of our supreme court, the enacting body of the new WIS. STAT. § 802.05. With that guidance, we conclude that § 802.05 is a procedural statute which, like Rule 11, is meant to deter pleading and practice abuses and must be applied retroactively to facts such as these. We also conclude that one forfeits the opportunity to seek sanctions if the safe-harbor provision notice requirements are not followed. We affirm.

*By the Court.*—Order affirmed.

¶ 37. ANDERSON, J. (*dissenting*). While I agree with the majority that WIS. STAT. § 802.05, repealed and recreated by S. CT. ORDER 03–06, 2005 WI 38, 278 Wis. 2d xiii (eff. Mar. 31, 2005), is a procedural rule, Majority, ¶ 23, I do not agree that it is to be applied retroactively under the particular facts of this case. I conclude that its retroactive application would impose an unreasonable burden upon the administration of the judicial system and Scott Oil.

¶ 38. A universal rule of statutory interpretation is that procedural statutes are to be applied retroactively.

> The general rule of statutory construction is that statutes are to be construed as relating to future and

687

not to past acts. There is an exception to this rule: if a statute is procedural or remedial, rather than substantive, the statute is generally given retroactive application. The exception to the rule also has a qualification, namely that the retroactive application must not disturb contracts or vested rights.

*Gutter v. Seamandel*, 103 Wis. 2d 1, 17, 308 N.W.2d 403 (1981).

¶ 39.   In *Mosing v. Hagen*, 33 Wis. 2d 636, 641, 148 N.W.2d 93 (1967), the supreme court explained this rule and its exceptions.

> In *Steffen v. Little* (1957), 2 Wis. (2d) 350, 357, 358, 86 N.W. (2d) 622, we stated:
>
> "While statutes in general are construed prospectively the rule is otherwise with statutes whose operation is procedural or remedial. In *State ex rel. Davis & Starr Lumber Co. v. Pors* (1900), 107 Wis. 420, 427, 83 N.W. 706, we quoted Chancellor Kent as follows:
>
> " 'This doctrine [prospective construction of statutes only] is not understood to apply to remedial statutes, which may be of a retrospective nature, provided that they do not impair contracts or disturb absolute vested rights, and only go to confirm rights already existing and in furtherance of the remedy, by curing defects and adding to the means of enforcing existing obligations.' "
>
> "In *Pawlowski v. Eskofski* (1932), 209 Wis. 189, 192, 244 N.W. 611, we said: 'It is true as a general rule that statutes that are remedial only are retroactive, . . . .' In *State ex rel. Schmidt v. District No. 2* (1941), 237 Wis. 186, 190, 295 N.W. 36, we said: ' . . . it is a fundamental rule of statutory construction that a retroactive operation is not to be given so as to impair an existing right or obligation *otherwise than in matters of proce-*

688

*dure,* unless that effect cannot be avoided without doing violence to the language of the enactment.' (Emphasis supplied.)"[1]

¶ 40. *Mosing* considered whether a provision of the statutes, governing commencement of an action, stating that if a summons was not filed with the clerk of courts and the requisite fees were not paid within one year of service on a defendant service was void, should be applied retroactively.[2] *Id.* at 639–41. In *Mosing*, the summons was served on the defendants on November 12, 1964, but it was not filed until January 3, 1966. *Id.* at 638–39. The defendants sought to have the proceedings declared null and void. *Id.* Mosing argued that a retroactive application of the statute would affect a vested right because during the time between service and the filing of the summons the statute of limitations had expired. *Id.* at 641. In rejecting Mosing's arguments, the supreme court held:

> We do not perceive that its [retroactive] application affects any substantive rights nor that it *imposes an unreasonable burden* upon the plaintiff as to its procedural requirements.

*Id.* at 642 (emphasis added). I take away from *Mosing* another qualification to the retroactive application of a procedural statute:  a statute will not be applied retroactively if to do so imposes an unreasonable burden upon a party.

---

[1] In *Gutter v. Seamandel*, 103 Wis. 2d 1, 17–18, 308 N.W.2d 403 (1981), the supreme court repeated this formulation immediately after setting forth the general rule of statutory construction that is quoted in the above text.

[2] WISCONSIN STAT. § 262.13(3) adopted by supreme court rule on January 20, 1964, with an effective date of May 1, 1965.

¶ 41. The retroactive application of the sanctions statute in this case will place an unreasonable burden on the effort to improve judicial efficiency, Majority, ¶ 21, because it allows Trinity to escape unscathed after prosecuting an action the circuit court declared frivolous from the day of filing. As the circuit court noted in denying Scott Oil's motion for sanctions, "[T]here was probably more than ample material available to Trinity that they should have realized that the continuation of this case would have been fruitless and it should have been terminated at an earlier time and fashion, but it didn't. It continued on."

¶ 42. The retroactive application will also place an unreasonable burden on Scott Oil, the inability to recoup some of the attorney fees incurred in this frivolous lawsuit. Scott Oil has had to defend this action for more than a year, a large portion of that time was devoted to a protracted discovery dispute brought about by Trinity's disregard of Scott Oil's discovery demands. When Scott Oil sought to enforce its right to discovery, Trinity defended by raising technical arguments that Scott Oil had failed to comply with local rules of procedure rather than raising any objections to discovery recognized by WIS. STAT. ch. 804. It is obvious that Scott Oil had to devote considerable resources to defending against Trinity's assertion that it breached the contract and to obtain discovery guaranteed to it by ch. 804.

¶ 43. It is also an unreasonable burden to hold the parties and their attorneys to new standards for the imposition of sanctions, which became effective only five days before the hearing on Scott Oil's successful motion for summary judgment. Between April 4, 2004, and June 30, 2005, everyone operated under the standards for determining and sanctioning frivolous con-

duct set forth in Wis. Stat. §§ 802.05 and 814.025. There are extensive changes in the new sanctions statutes. In addition to the creation of a safe harbor, the new statute provides for broad judicial discretion in determining that an act is frivolous and grants limited permission to make factual contentions that lack evidentiary support. Janine P. Geske and William C. Gleisner, III, *Frivolous Sanction Law in Wisconsin*, 79 Wisconsin Lawyer 16, 19 (2006). Furthermore, the purpose of the new statute is to deter rather than to compensate, S. Ct. Order 03–06, 278 Wis. 2d at xxi; to fulfill this purpose the statute requires that if a monetary sanction is imposed, it should ordinarily be paid into the court, § 802.05(3)(b), and bars the imposition of monetary sanctions for frivolous arguments—no longer "bad faith" arguments—for the extension, modification or reversal of existing law. Sec. 802.05(2)(b). I am sure that neither Scott Oil nor Trinity nor their counsel conducted this litigation under these new standards.

¶ 44.   In 1994, the Seventh Circuit was faced with a cross-appeal from the denial of Rule 11 sanctions and began its discussion with the observation, "[o]ur resolution of the sanctions question initially is complicated by the December 1, 1993 amendments to Rule 11, which took effect while this appeal was pending." *Land v. Chicago Truck Drivers, Helpers and Warehouse Workers Union (Indep.) Health and Welfare Fund*, 25 F.3d 509, 515 (7th Cir. 1994).[3] The United States Supreme

---

[3] Supreme Ct. Order 03–06, 2005 WI 38, 278 Wis. 2d xiii, xvii (eff. Mar. 31, 2005), recognizes that Wisconsin courts "will now be able to look to applicable decisions of federal courts since 1993 for guidance in the interpretation and application of the mandates in FRCP 11 in Wisconsin." *Id.* This has been our practice whenever a state rule mirrors the federal rule. *State v.*

Court adopted the amended version of Rule 11 in early 1993 to take effect on December 1, 1993, and it governed "all proceedings in civil cases thereafter commenced and, insofar as just and practicable, all proceedings in civil cases then pending."[4] *Id.* at 516 (citation omitted). In deciding that it would not be "just and practicable," to apply the newly amended Rule 11 to the case the Seventh Circuit reasoned:

> Both at the time Land filed his complaint and when the Fund moved for sanctions, the old Rule 11 was in effect, and both parties presumably were operating under the standards and procedures propounded in that rule. Counsel's conduct should therefore be judged under those standards. [*Knipe v. Skinner*, 19 F.3d 72, 78 (2d Cir. 1994)] (court should not charge party with knowledge of a rule that was not in effect at the time of filing); *In re Crysen/Montenay Energy Co.*, 166 B.R. 546, 552 n.5 (S.D.N.Y.1994) (same); *Kraemer Export Corp. v. Peg Perego U.S.A., Inc.*, 1994 WL 86357, *7–9, 1994 U.S. Dist. LEXIS 3071, *21–22 (S.D.N.Y. Mar. 17, 1994) (would not be just to apply amended rule to conduct that occurred and motions that were filed prior to amendment); *Agretti v. ANR Freight System, Inc.*, 1994 WL 46670, *1, 1994 U.S. Dist. LEXIS 1433, *2 (N.D. Ill. Feb. 7, 1994) (would not be just to apply amended rule

*Cardenas-Hernandez*, 219 Wis. 2d 516, 527–28, 579 N.W.2d 678 (1998). Of course, these federal decisions are not binding on us but we can adopt those that we find persuasive. *Streff v. Town Of Delafield*, 190 Wis. 2d 348, 356–57, 526 N.W.2d 822 (Ct. App. 1994).

[4] Unfortunately, the Wisconsin Supreme Court failed to specify that the new sanctions statute would govern all proceedings in civil cases commenced after the effective date "and, insofar as just and practicable, all proceedings in civil cases then pending." *See Land v. Chicago Truck Drivers, Helpers and Warehouse Workers Union (Indep.) Health and Welfare Fund*, 25 F.3d 509, 516 (7th Cir. 1994).

when parties must have expected that their conduct would be judged under the rule in effect at the time).

*Land*, 25 F.3d at 516.

¶ 45. I see no difference between deciding whether retroactive application is "just and practicable," *id.*, and deciding whether retroactive application "imposes an unreasonable burden" on a party. *Mosing*, 33 Wis. 2d at 642. For this reason, I adopt the Seventh Circuit's reasoning and conclude, under the facts of this case, it would impose unreasonable burden on the administration of the judicial system and Scott Oil to judge the conduct of the parties by standards that were not in effect when the conduct occurred.